## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| Kenisha Cross, *on behalf of herself and others similarly situated*, | ) ) ) | Case No.: 1:15-cv-01270-RWS |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| Wells Fargo Bank, N.A., | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

## Table of Contents

Introduction .................................................................................................1

Summary of the Settlement.........................................................................2

Claims Administration ................................................................................2

Argument.....................................................................................................4

   I.   The Settlement satisfies all requirements and merits approval. ......................4

     A.  The parties negotiated the Settlement at arm's-length and with the assistance of a well-respected mediator. ............................................6

     B.  Wells Fargo's legal and factual defenses posed significant risks to Ms. Cross's claims. .........................................................................7

     C.  The Settlement falls well within the range of recovery for similar approved TCPA class actions. ........................................................11

     D.  The parties reached the Settlement after being fully apprised of the risks and uncertainties associated with it. ................................13

     E.  Class Counsel support the Settlement as fair, reasonable, adequate, and in the best interests of Class Members. .............................15

     F.  The favorable reaction to the Settlement supports its final approval..........15

   II.  Distribution of notice satisfied due process requirements. ...........................17

Conclusion ...............................................................................................18

# Table of Authorities

## Cases

*Adams v. AllianceOne Receivables Mgmt. Inc.*,
  No. 08-cv-00248, ECF No. 113 (S.D. Cal. Apr. 23, 2012)………….…..12

*Arthur v. Sallie Mae Inc.*,
  No. 10-cv-00198, 2012 WL 90101 (W.D. Wash. Jan. 10, 2012)…………..12

*Arthur v. SLM Corp.*,
  No. C10–0198 JLR, Docket No. 249 (W.D. Wash. Aug. 8, 2012)………...18

*Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002)…………………………….………………5

*Balthazor v. Central Credit Servs., Inc.*,
  No. 07-61822, 2012 WL 6725872 (S.D. Fla. Dec. 27, 2012)………..……….8

*Bayat v. Bank of the W.*,
  No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015)……….17

*Bennet v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984)………………………...……………….6, 11

*Briseno v. ConAgra Foods, Inc.*,
  --- F.3d ----, No. 15-55727, 2017 WL 24618 (9th Cir. Jan. 3, 2017)…..……8

*Brotherton v. Cleveland*,
  141 F. Supp. 894 (S.D. Ohio 2001)…………………………………………16

*Byrd v. Aaron's Inc.*,
  784 F.3d 154 (3d Cir. 2015)…………………….……………………………8

*Campbell-Ewald Co. v. Gomez*,
  136 S. Ct. 663 (2016)………………………………………………………10

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013)…………………………………………………8

*Chapman v. First Index, Inc.*,
 No. 09 C 5555, 2014 WL 840565 (N.D. Ill. Mar. 4, 2014)…………………..8

*Charvat v. Allstate Corp.*,
 29 F. Supp. 3d 1147 (N.D. Ill. 2014)……………………...………………….7

*Chun-Hoon v. McKee Foods Corp.*,
 716 F. Supp. 2d 848 (N.D. Cal. 2010)……………………………...………….16

*Connor v. JPMorgan Chase Bank*,
 No. 10 CV1284, ECF No. 113 (S.D. Cal. May 30, 2014)…………………..12

*Cotton v. Hinton*,
 559 F.2d 1326 (5th Cir. 1977)……………………………...……………………..15

*Ewing v. SQM US, Inc.*,
 No. 3:16-CV-1609-CAB-JLB, 2016 WL 5846494
 (S.D. Cal. Sept. 29, 2016)………………………………………………………9

*Garcia v. Gordon Trucking, Inc.*,
 No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575
 (E.D. Cal. Oct. 31, 2012)……………………………...……………………..16

*Gehrich v. Chase Bank USA, N.A.*,
 316 F.R.D. 215 (N.D. Ill. 2016)…………………………………………………12

*Grannan v. Alliant Law Grp., P.C.*,
 No. C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012)…………18

*In re Austrian & German Bank Holocaust Litig.*,
 80 F. Supp. 2d 164 (S.D.N.Y. 2000)………………………………………..16

*In re Capital One Tel. Consumer Prot. Act Litig.*,
 80 F. Supp. 3d 781 (N.D. Ill. 2015)……………...……………………………12

*In re Checking Account Overdraft Litig.*,
 275 F.R.D. 654 (S.D. Fla. 2011)……………………………………………6, 14

*In re Domestic Air Transp. Antitrust Litig.*,
 148 F.R.D. 297 (N.D. Ga. 1993)…………………...………………5, 7, 12, 15

iii

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992)……………………..……………………5

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001)……………………….……………5, 6, 15

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012)……………………….……………….17

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015)………………………………………17

*Lopez v. Hayes Robertson Grp., Inc.*,
    No. 1310004CIVMARTINEZGO, 2015 WL 5726940
    (S.D. Fla. Sept. 29, 2015)……………………………………….……………..17

*Malta v. Fed. Home Loan Mortg. Corp.*,
    No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013)………………12

*Mashburn v. Nat'l Healthcare, Inc.*,
    684 F. Supp. 660 (M.D. Ala. 1988)…………..……………………………..14

*Melanie K. v. Horton*,
    No. 1:14-CV-710-WSD, 2015 WL 1799808 (N.D. Ga. Apr. 15, 2015)…..4, 5

*Michel v. WM Healthcare Solutions, Inc.*,
    No. 1:10-CV-638, 2014 WL 497031 (S.D. Ohio Feb. 7, 2014)……...…17, 18

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015)……………………….…………………………8

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)……………………...……………………16

*Palm Beach Golf Center-Boca, Inc. v. Sarris*,
    311 F.R.D. 688 (S.D. Fla. 2015)……………………...……………..13

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007)……………….……………………..16

iv

*Ressler v. Jacobson*,
    822 F. Supp. 1551 (M.D. Fla. 1992)………………………….…………..7, 14

*Rikos v. Procter & Gamble Co*.,
    799 F.3d 497 (6th Cir. 2015)………………………………………………8

*Rogers v. Capital One Bank (USA), N.A.*,
    No. 1:15-CV-4016-TWT, 2016 WL 3162592 (N.D. Ga. June 7, 2016)…..…9

*Romero v. Dep't Stores Nat'l Bank*,
    No. 15-CV-193-CAB-MDD, 2016 WL 4184099 (S.D. Cal. Aug. 5, 2016)….9

*Rose v. Bank of Am., N.A.*,
    No. 5:12-cv-04009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)…………12

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002)………………………………………….……16

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
    821 F.3d 992 (8th Cir. 2016)………………………………………………8

*Shamblin v. Obama for Am.*,
    No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765 (M.D. Fla. Apr. 27, 2015)..8

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*,
    279 F.R.D. 442 (N.D. Ohio 2012)………………………..…………………13

*Smith v. Aitima Med. Equip., Inc.*,
    No. EDCV1600339ABDTBX, 2016 WL 4618780
    (C.D. Cal. July 29, 2016)………………………………………………9

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)………………………………………………9

*St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*,
    No. 12-174, 2013 WL 6498245 (E.D. Mo. Dec. 11, 2013)…………………13

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)………………………………..…………………10

*Wilkins v. HSBC Bank Nev., N.A.*,
    No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015)………...………12, 17

*Wilson v. Everbank*,
    No. 14-CIV-22264, 2016 WL 457011 (S.D. Fla. Feb. 3, 2016)………………6

**Secondary Authorities**

2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011)…………………………….6

Newberg on Class Actions, § 11:50……………………………………………….5

**Introduction**

The Settlement—which the parties reached after contentious, arm's length negotiations, and with the assistance of well-respected mediator Hunter Hughes—resulted in an all-cash, non-reversionary settlement fund of $30,446,022.75. After receiving notice of the Settlement, 428,233 unique Class Members submitted valid claims for their *pro rata* share of the settlement fund. After deducting from the settlement fund all costs of notice and claims administration, attorneys' fees and costs, and an incentive award—which are subject to this Court's approval—each participating Class Member will receive approximately $42.[1] Moreover, only seventy-six Class Members excluded themselves from the Settlement, and only five submitted an objection. Given this excellent result, and considering the overwhelmingly favorable support for the Settlement from the Class Members, Ms. Cross respectfully requests that this Court finally approve the Settlement, and enter a final judgment and order.

---

[1] This figure assumes an award of the full amount of the requested attorneys' fees and costs, and the incentive award Ms. Cross requests. *See* Doc. 61 at 1. It may also increase if Garden City Group, LLC ("GCG")—the Court-appointed settlement administrator—identifies duplicate or fraudulent claims, or it may decrease slightly if the court permits late-filed claims.

## Summary of the Settlement

The Settlement requires Wells-Fargo to pay $30,446,022.75 into a non-reversionary cash settlement fund, out of which the approximately 428,233 valid claimants will be compensated *pro rata*. Doc. 45-1 at 10.[2]

## Claims Administration

Following the date on which this Court entered its order preliminarily approving the Settlement, GCG delivered due process notice to Class Members at a cost capped at $2.995 million. The successful claims rate and extremely small number of exclusions and objections demonstrate not only the effectiveness of the notice, but also Class Members' satisfaction with the Settlement.

*Direct Mail Notice*: GCG caused 6,385,439 postcards, which include notice of the Settlement, to be mailed to potential Class Members. Declaration of Stephen J. Cirami, attached as Exhibit B, at ¶ 12.[3] GCG re-mailed any notices returned undeliverable to forwarding addresses, where undeliverable postcards were returned with a forwarding address. *Id*., ¶ 13. For undeliverable postcards returned without a

---

[2]     The parties' executed settlement agreement is found at Doc. 45-2 at 7-39. Following the date on which the parties signed their settlement agreement, Class Counsel conducted discovery that confirmed the size of the class. *See* Transcript of Jacob Mou at 12:16-24, attached as Exhibit A.

[3]     Because Wells Fargo's records associate more than one name and more than one address with some of the cellular telephone numbers at issue, the number of names of individuals to whom GCG mailed postcards exceeds the number of cellular telephone numbers at issue.

forwarding address, GCG performed advanced address searches to locate updated addresses, and re-mailed postcards to any updated addresses obtained. *Id.*, ¶ 14. Based on the number of postcards mailed and ultimately not returned as of January 23, 2017, approximately 88% of Class Members received direct mail notice of the Settlement. *Id.*, ¶ 15.

*Publication Notice*: To supplement the already robust direct mail notice, GCG conducted a nationwide, website-based publication notice program, by way of banner ads posted on the Yahoo! Audience Network. *Id.*, ¶ 16. The program commenced on October 17, 2016 and ran through November 13, 2016. *Id.*

*Press Release*: GCG issued a press release outlining the Settlement. *Id.*, ¶ 18. The press release was distributed on October 17, 2016, over PR Newswire's US1 newsline and National Hispanic newslines. *Id.* US1 press releases are distributed to over 15,000 media outlets, including newspapers, magazines, national wire services, television, radio and online media in all fifty states. *Id.* The Hispanic newslines reach over 7,000 U.S. Hispanic media contacts including online placement on approximately 100 Hispanic websites nationally. *Id.*

*Settlement Website*: GCG established and maintains a website dedicated to the Settlement—www.CrossWellsFargoTCPA.com—that includes information pertinent to Class Members as well as answers to frequently asked questions. *Id.*, ¶ 19. Class Members were able to file claims via the Settlement website. *Id.*

3

*Toll-Free Hotline*: GCG established and maintains a toll-free telephone number—(866) 565-7718—for Class Members to obtain information about the Settlement. *Id*., ¶ 20. The toll-free telephone number was set up on October 17, 2016, and remains accessible twenty-four hours a day, seven days a week. *Id*. Class Members were able to submit a claim by calling the toll-free number. *Id*.

*Claims*: 428,233 Class Members submitted claims. *Id*., ¶ 22. 276,767 did so by mail, 133,621 did so online, and 17,824 did so by telephone. *Id*.

*Exclusions*: Seventy-six Class Members—or approximately .00001% of the Class—excluded themselves from the Settlement, of which sixty-nine were timely. *Id*., ¶ 25.

*Objections*: Five Class Members—or approximately .0000008% of the Class—objected to the Settlement. *Id*., ¶ 22.

*Class Action Fairness Act Notice*: GCG served notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. *Id*., ¶ 7. No government official, state or federal, objected to or raised an issue regarding the Settlement.

## Argument

## I.   The Settlement satisfies all requirements and merits approval.

"Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is 'fair, reasonable, and adequate.'" *Melanie K. v. Horton*, No. 1:14-CV-710-WSD, 2015 WL 1799808, at *2 (N.D. Ga.

Apr. 15, 2015) (Duffey, Jr., J.) (quoting Fed. R. Civ. P. 23(e)(2)). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg on Class Actions, § 11:50. As well, "[t]here is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n For Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) (Shoob, J.) ("In assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.") (internal citation omitted).

Factors relevant to a fairness determination are: "(1) the influence of fraud or collusion on the parties' reaching a settlement, (2) 'the likelihood of success at trial,' (3) 'the range of possible recovery,' (4) 'the complexity, expense[,] and duration of litigation,' (5) 'the substance and amount of opposition to the settlement,' and (6) 'the stage of proceedings at which the settlement was achieved.'" *Melanie K.*, 2015 WL 1799808, at *2 (quoting *Bennet v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). The judgment of experienced counsel is also to be considered. *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 691 (N.D. Ga. 2001) (Story, J.).

**A. The parties negotiated the Settlement at arm's-length and with the assistance of a well-respected mediator.**

The parties negotiated the Settlement through a respected mediator, Hunter R. Hughes, for whom courts in this District have expressed high regard. *See, e.g.*, *Ingram*, 200 F.R.D. at 693 ("The fact that the entire mediation was conducted under the auspices of Mr. Hughes, a highly experienced mediator, lends further support to the absence of collusion."). Because Mr. Hughes was instrumental in assisting the parties in reaching an agreement, and since there exists no suggestion otherwise, there is no doubt the parties negotiated the Settlement at arm's-length and absent fraud or collusion. *See* 2 McLaughlin on Class Actions, § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *see, e.g.*, *Wilson v. Everbank*, No. 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (finding no evidence of fraud or collusion where the settlement was negotiated at arms' length, and where the mediation was overseen by a nationally renowned mediator); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) ("The Court finds that the Settlement was reached in the absence of collusion, is the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator[.]").

**B. Wells Fargo's legal and factual defenses posed significant risks to Ms. Cross's claims.**

"[T]he likelihood and extent of any recovery from the defendants absent . . . settlement" is an important consideration. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 314; *see also Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").

Here, Ms. Cross and the Class Members' success was far from certain. First, Wells Fargo contends that it had prior express consent to call Ms. Cross and Class Members. Wells Fargo bases its argument on form disclosures and standard policies and procedures applicable to its deposit account line of business. And since prior express consent is a defense to a claim under the TCPA, s*ee, e.g.*, *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014), Wells Fargo's contention, if proven, could have resulted in no recovery for Ms. Cross and many, if not most Class Members.

Second, Wells Fargo suggests that Ms. Cross would not be able to certify, over its opposition, the class she seeks. Specifically, Wells Fargo asserts that the Class is not ascertainable and individual issues predominate over common questions of law and fact. Notably, some courts in the Eleventh Circuit have refused to certify contested TCPA class actions, making the likelihood of certification here uncertain.

7

*See, e.g.*, *Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765, at \*8 (M.D. Fla. Apr. 27, 2015); *Balthazor v. Central Credit Servs., Inc.*, No. 07-61822, 2012 WL 6725872, at \*3-4 (S.D. Fla. Dec. 27, 2012). And this uncertainty is compounded by the fact that courts of appeals are split when it comes to the manner in which to apply an ascertainability standard to certification requests under Rule 23, *compare Briseno v. ConAgra Foods, Inc.*, --- F.3d ----, No. 15-55727, 2017 WL 24618 (9th Cir. Jan. 3, 2017); *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 995-96 (8th Cir. 2016); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015), *cert. denied*, --- U.S. ----, 136 S. Ct. 1161 (2016), *with Byrd v. Aaron's Inc.*, 784 F.3d 154, 162-63 (3d Cir. 2015); *Carrera v. Bayer Corp.*, 727 F.3d 300, 306-08 (3d Cir. 2013), and that the Eleventh Circuit has not weighed in on the issue in a published opinion.[4]

Third, Wells Fargo argued that its accountholders were subject to arbitration agreements. A ruling requiring individual arbitration could have precluded any recovery by any class, and forced Class Members into the difficult and costly posture of litigating claims in an arbitration forum.

---

[4]     *See also Chapman v. First Index, Inc.*, No. 09 C 5555, 2014 WL 840565, at \*2 (N.D. Ill. Mar. 4, 2014) ("Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case."), *aff'd in part*, 796 F.3d 783 (7th Cir. 2015).

Fourth, Ms. Cross and the Class faced a very real risk that an adverse ruling in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)—a case pending before the Supreme Court during the pendency of this matter—could eliminate their claims altogether, given the question before the Court: Whether an alleged violation of a federal statute, without any concrete harm, confers Article III standing. And although this Court, like many others, has since held that TCPA claims satisfy Article III's injury-in-fact requirement, *see Rogers v. Capital One Bank (USA), N.A.*, No. 1:15-CV-4016-TWT, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016) (Thrash, Jr., J.), decisions from a small minority of district courts outside of the Eleventh Circuit support Wells Fargo's position even after *Spokeo*. *See Ewing v. SQM US, Inc.*, No. 3:16-CV-1609-CAB-JLB, 2016 WL 5846494, at *3 (S.D. Cal. Sept. 29, 2016); *Romero v. Dep't Stores Nat'l Bank*, No. 15-CV-193-CAB-MDD, 2016 WL 4184099, at *1 (S.D. Cal. Aug. 5, 2016); *Smith v. Aitima Med. Equip., Inc.*, No. EDCV1600339ABDTBX, 2016 WL 4618780, at *1 (C.D. Cal. July 29, 2016). So even though a strong majority of courts side with this Court, the fact that the Eleventh Circuit has not addressed Wells Fargo's standing-based contention in the context of the TCPA means that the issue is still not settled in this Circuit.

Fifth, before the parties negotiated the Settlement, Wells Fargo argued that its offer of judgment to Ms. Cross mooted her case—an argument that was also before the Supreme Court during the pendency of this case. Although the Supreme Court

9

ultimately rejected Wells Fargo's position in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), *as revised* (Feb. 9, 2016), this issue posed a real risk that Ms. Cross and the Class Members would recover nothing.

Sixth, shortly after Ms. Cross filed her class action complaint, the Supreme Court granted certiorari in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), a case widely believed to be a vehicle for the Supreme Court to fundamentally alter class certification law in ways unfavorable to plaintiffs seeking certification. While the Court ultimately ruled in a way more positive for plaintiffs generally, the risk was real and, with a new justice likely to be appointed imminently, the risk remains of further changes to the law in this area.

Seventh, the D.C. Circuit Court of Appeals still has pending before it a consolidated appeal of the Federal Communications Commission's July 10, 2015 Declaratory Ruling and Order, which was favorable to plaintiffs. An adverse ruling could negatively affect Ms. Cross's claims should the D.C. Circuit adopt the position that a "called party" under the TCPA refers to the intended recipient of a call, and not the person actually called. This position, if accepted, could not only undercut Ms. Cross's request for relief, but curtail the viability of all "wrong number" claims.

Of note, the D.C. Circuit only recently heard argument—one that lasted 156 minutes[5]—and has yet to issue an opinion.

So, while Ms. Cross disputes and disagrees with each of Wells Fargo's arguments, it is obvious that her likelihood of success in this case was, and remains, at real risk, separate and apart from the risk that exists in every case of losing at trial or on appeal. Accordingly, Ms. Cross's decision to settle her claims, and the claims of Class Members, is eminently reasonable under the circumstances. *See Bennett*, 96 F.R.D. at 349-50 (noting that the plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for the plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

## C. The Settlement falls well within the range of recovery for similar approved TCPA class actions.

The Settlement here—payment by Wells Fargo of a non-reversionary, all-cash fund in excess of $30 million—compares well, both overall and on a per-class member basis, with similar TCPA class action settlements that courts have recently approved. *See, e.g. Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016) ($34 million for more than 32 million class members); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($39.98 million

---

[5] https://www.cadc.uscourts.gov/recordings/recordings2017.nsf/DCF7D286EBE49 FC185258051005ED50F/$file/15-1211.mp3 (last visited Jan. 10, 2017).

for more than 9,065,262 class members); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ($75.46 million for 16,645,221 class members); *Rose v. Bank of Am., N.A.*, No. 5:12-cv-04009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ($32.08 million for 7,723,860 class members); *Connor v. JPMorgan Chase Bank*, No. 10 CV1284, ECF No. 113 (S.D. Cal. May 30, 2014) ($11.66 million for 2,684,518 class members); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ($17.1 million for 5,887,508 class members);[6] *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248, ECF No. 113 (S.D. Cal. Apr. 23, 2012) ($9 million for 6,079,411 class members); *Arthur v. Sallie Mae Inc.*, No. 10-cv-00198, 2012 WL 90101 (W.D. Wash. Jan. 10, 2012) ($24.15 million for 7,792,256 class members).

The Settlement, therefore, falls well within the range of approved recoveries in TCPA class actions—"a range which recognizes the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 323; *see also id.* at 326 (A court "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the

---

[6]   The Settlement exceeds that in *Malta*—also an action against Wells Fargo involving autodialed mortgage debt collection calls—by approximately forty percent on a per-class-member basis.

mere probability of relief in the future, after protracted and expensive litigation."). Indeed, it is at the high end of the range when compared to similarly sized cases.

Furthermore, the Settlement provides Class Members with substantial monetary relief, about $42 each, despite the purely statutory damages at issue— damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that class members have an interest in individually controlling the prosecution of separate actions); *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) (stating that, since each class member is unlikely to recover more than a small amount, they are unlikely to bring individual suits under the TCPA). In other words, the Settlement provides Class Members real monetary relief that the vast majority of them would likely never have pursued on their own.

### D. The parties reached the Settlement after being fully apprised of the risks and uncertainties associated with it.

Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate

appreciation of the merits of the case before negotiating." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1349 (internal quotation marks omitted). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Here, the parties entered into the Settlement only after they were fully apprised of the facts, risks, and obstacles involved with the possibility of continued litigation. Before mediating this matter the parties exchanged thousands of pages of documents, and briefed for settlement purposes the strengths and weaknesses of their respective positions. *See* Doc. 45-1 at 21. As a result, the parties "conducted enough discovery to be able to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation" before negotiating the settlement. *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988). Class Counsel's assessment of the case was also informed by their extensive experience in TCPA class actions, including previous actions against Wells Fargo. Moreover, after settlement was reached, Class Counsel conducted additional discovery to confirm that the information upon which it is based is accurate. *See* Exhibit A.

14

**E. Class Counsel support the Settlement as fair, reasonable, adequate, and in the best interests of Class Members.**

"In a case where experienced counsel represent the class, the Court absent fraud, collusion, or the like, should hesitate to substitute its own judgment for that of counsel." *Ingram*, 200 F.R.D. at 691 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.").

Here, Ms. Cross's counsel—whose qualifications include substantial experience with virtually all of the largest TCPA class actions—believe the Settlement is fair, reasonable, and adequate, and in the best interests of Class Members. Class Counsel also believe the benefits of the Settlement far outweigh the delay and considerable risk of proceeding to trial. *See* Doc. 45-2 at 23.

**F. The favorable reaction to the Settlement supports its final approval.**

As a result of the notice that GCG distributed, 428,233 unique Class Members submitted claims, seventy-six excluded themselves from the Settlement, and only five objected to it.[7] *See* Exhibit B, ¶ 22. This overwhelmingly favorable reaction to the Settlement supports its approval. *See Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *6 (E.D. Cal. Oct. 31, 2012) ("The

---

[7]     Ms. Cross specifically addresses these objections through a separate brief, filed contemporaneously with this memorandum.

absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement."); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("A low percentage of objections demonstrates the reasonableness of a settlement."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Brotherton v. Cleveland*, 141 F. Supp. 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *accord Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002) ("We conclude that the district court did not abuse its discretion in determining that the settlement, from which an extremely small percentage of class members opted out, was fair, reasonable and adequate . . . .").

## II.     Distribution of notice satisfied due process requirements.

"Rule 23 requires that notice to class members be the 'best notice practicable under the circumstances[.]'" *Lopez v. Hayes Robertson Grp., Inc.*, No. 1310004CIVMARTINEZGO, 2015 WL 5726940, at *6 (S.D. Fla. Sept. 29, 2015). But "even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (collecting cases).

Distribution of notice here far exceeded this minimum standard. In particular, GCG used all reasonable efforts to provide direct mail notice to each member of the settlement class. *See, generally,* Exhibit B. As a result, 88% of Class Members received individual direct mail notice. *Id.*, ¶ 15. The resulting claims rate of approximately 6.7% compares favorably with claims rates in other finally approved TCPA class action settlements. *See, e.g.*, *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement, and 1.1% for injunctive relief portion of settlement); *Wilkins*, 2015 WL 890566, at *3 ("3.16% of the class[] filed a timely claim"); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving TCPA class action settlement with 2.5% claims rate); *Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *4 (S.D. Ohio Feb. 7, 2014) ("a total response rate of 3.6%"); *Arthur v. SLM Corp.*, No. C10–0198 JLR, Docket No. 249

at 2–3 (W.D. Wash. Aug. 8, 2012) (claims rate of approximately 2%); *Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 WL 216522, at *3 (N.D. Cal. Jan. 24, 2012) (claims rate under 3%).

## Conclusion

Ms. Cross respectfully submits that the Settlement—which requires Wells Fargo to pay $30,446,022.75 into an all-cash, non-reversionary fund—constitutes an excellent result for Class Members. And for the foregoing reasons, she respectfully requests that this Court finally approve the Settlement, and enter a final judgment and order.

Date: January 23, 2017                    GREENWALD DAVIDSON RADBIL
                                          PLLC

                                          /s/ Aaron D. Radbil
                                          Aaron D. Radbil
                                          106 East Sixth Street, Suite 913
                                          Austin, Texas 78701
                                          Phone: (512) 322-3912
                                          Fax: (561) 961-5684
                                          aradbil@gdrlawfirm.com

                                          Michael L. Greenwald
                                          5550 Glades Rd., Suite 500
                                          Boca Raton, Florida 33431
                                          Phone: (561) 826-5477
                                          Fax: (561) 961-5684
                                          mgreenwald@gdrlawfirm.com

                                          EHRLICH & SCHAPIRO, LLC
                                          Craig J. Ehrlich
                                          2300 Henderson Mill Road, Suite 300
                                          Atlanta, Georgia 30345
                                          Office: 844-534-9984, Ext. 301
                                          Direct: 404-365-4460
                                          Fax: 855-415-2480
                                          craig@ehrlichlawoffice.com

                                          LIEFF, CABRASER, HEIMANN &
                                          BERNSTEIN, LLP
                                          Jonathan D. Selbin
                                          Email: jselbin@lchb.com
                                          250 Hudson Street, 8th Floor
                                          New York, NY 10013
                                          Telephone: (212) 355-9500
                                          Facsimile: (212) 355-9592

                                          Daniel M. Hutchinson
                                          Email: dhutchinson@lchb.com
                                          275 Battery Street, 29th Floor
                                          San Francisco, California 94111-3339

Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Andrew R. Kaufman
Email: akaufman@lchb.com
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

BURKE LAW LLC
Alexander H. Burke
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

MEYER WILSON CO., LPA
Matthew R. Wilson
Email: mwilson@meyerwilson.com
Michael J. Boyle, Jr.
Email: mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

LAW OFFICES OF DOUGLAS J.
CAMPION, APC
Douglas J. Campion
Email: doug@djcampion.com
17150 Via Del Campo, Suite 100
San Diego, CA 92127
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

KEOGH LAW, LTD.
Keith Keogh

Email: keith@keoghlaw.com
55 W. Monroe, Ste. 3390
Chicago, IL 60603
Telephone: 312-265-3258
Facsimile: 312-726-1093

SKAAR & FEAGLE, LLP
James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
2374 Main Street, Suite B
Tucker, GA 30084
404 / 373-1970
404 / 601-1855 fax

Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
Kris Skaar
Georgia Bar No. 649610
krisskaar@aol.com
133 Mirramont Lake Drive
Woodstock, GA 30189
770 / 427-5600
404 / 601-1855 fax

KAZAROUNI LAW GROUP, APC
Abbas Kazerounian
Email: ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6806
Facsimile: (800) 520-5523

HYDE & SWIGART
Joshua B. Swigart, Esq.
josh@westcoastlitigation.com
2221 Camino del Rio South, Suite 101
San Diego, CA 92108
Telephone (619) 233-7770

21

Facsimile: (619) 297-1022

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

I certify that the foregoing document was prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Time New Roman and a point size of 14.

/s/ Aaron D. Radbil
Aaron D. Radbil

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was file electronically on January 23, 2017, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

/s/ Aaron D. Radbil
Aaron D. Radbil